WILMERHALE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 15, 2013

May 1, 2013

**VIA EMAIL**

The Honorable Paul A. Crotty
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312
CrottyNYSDChambers@nysd.uscourts.gov, Marlon_Ovalles@nysd.uscourts.gov

      Re:  *Residents for Sane Trash Solutions, Inc., et al. v. U.S. Army Corps of Engineers, et al.*, No. 12 Civ. 8456 (PAC) ("Sane Trash")

Dear Judge Crotty:

      I write on behalf of the *Sane Trash* plaintiffs to respond to Assistant Corporation Counsel Carrie Noteboom's April 26, 2013, letter regarding the City defendants' proposed motion for judgment on the pleadings with respect to plaintiffs' equal protection claims (the Fourth and Fifth Causes of Action).[1]

      At base, this action concerns defendants' approval of an enormous trash facility (the "MTS garbage facility") in the middle of a densely-populated residential neighborhood and immediately adjacent to parks, low income housing, and the Asphalt Green recreational center. This MTS garbage facility will be one of the largest marine transfer stations in New York City and the only one located in a residential neighborhood. Despite the adverse environmental impacts that such a massive waste transfer station will inevitably create, the City proposes to build this facility at East 91st Street in Manhattan—a siting decision that conflicts with defendant New York City Department of Sanitation's ("DSNY") own regulations for commercial transfer stations. Those regulations state that such "transfer station[s] shall be at least 400 feet from a residential district, hospital, public park or school" (the "400-ft rule"). New York City, N.Y., R. and Regs. tit. 16, § 4-32(b)(1)(ii). That rule is designed to ensure that those populated locations are protected from the noxious commercial waste and the commercial carriers (that are far less regulated than their DSNY counterparts) which transport that waste. Plaintiffs assert, *inter alia*, that their equal protection rights under the United States and New York State Constitutions have been violated because the 400-ft rule was not applied here.

      None of the arguments put forth by the City in its pre-motion letter is valid.

      In its letter, the City claims rational basis review applies here, but fails to offer a rational basis—or any basis whatsoever—for treating the East 91st Street location differently than other

---

[1] Ms. Noteboom's letter also regards the equal protection and state common law claims asserted by plaintiffs in the related case *Kellner, et al. v. U.S. Army Corp of Engineers, et al.*, No. 12 Civ. 8458 (PAC).

WILMERHALE

May 1, 2013
Page 2

locations in Manhattan that DSNY rejected for commercial waste transfer stations due to their proximity to residences and parks.[2] Instead, to avoid plaintiffs' equal protection claims, the City asks the Court to adopt state court findings that purportedly uphold the location of the 91st Street MTS as rational. (*See* City Letter at 2 (citing *Ass'n for Cmty. Reform Now ("ACORN") v. Bloomberg*, 52 A.D.3d 426, 861 N.Y.S.2d 325 (2008), *lv. denied*, 11 NY3d 707 (2008); *Gracie Point Community Council v. New York State Dep't of Envtl. Conserv.*, 92 A.D.3d 123, 131 (3d Dep't 2011), *lv. denied*, 19 N.Y.3d 807 (2012)).) As an initial matter, these cases are not binding on this Court, nor are they preclusive as to the *Sane Trash* plaintiffs. Moreover, these decisions do not consider the crux of the constitutional issues raised in the *Sane Trash* complaint, including whether it is rational to deny protection to residential districts (and the residents that live within them) located in close proximity to a City-owned waste transfer station that accepts commercial garbage delivered by private carters, while at the same time providing such protection to other City residents with respect to privately-owned facilities that handle identical garbage delivered by identical carters.

Next, the City relies on *McGowan v. Maryland*, 366 U.S. 420, 427 (1961) to argue that it is "questionable" whether plaintiffs can establish a "class of one" claim using an entire neighborhood as a comparator. Here, again, the City relies on inapposite authority. The Court in *McGowan* found that equal protection rights are not violated by rational distinctions, made by legislatures, between political subdivisions. That principle has no application here because plaintiffs have alleged the City has not only treated them differently from other similarly situated City residents, without a rational basis, but is in fact exposing them to environmental and health dangers. The cases cited by the City that reject equal protection claims based on uneven distribution of municipal services are similarly irrelevant. Plaintiffs are not alleging that they have received an unequal allocation of scarce resources; rather, plaintiffs in this case challenge the decision to effectively exempt the MTS garbage dump from the City's own restrictions designed to protect City residents from the adverse health and safety impacts of transfer station operations.

The City's argument that plaintiffs have failed to plead facts sufficient to establish that they were intentionally treated differently than similarly situated individuals is also incorrect. Plaintiffs have alleged that all other New York City residents living near commercial waste transfer stations enjoy a protective "buffer zone" to mitigate the adverse impacts of waste transfer stations, a buffer zone that the City has already expressly admitted is necessary to protect residents from environmental and health injury. This buffer zone is especially required for facilities that process commercial waste because private carters delivering commercial garbage are not subject to the same health and environmental regulations to which public carters are

---

[2]   For instance, both the West 140th Street waste transfer station and the Pier 42 MTS were rejected on these grounds. *See Commercial Waste Management Study Volume V, Manhattan Transfer Station Siting Study Report*, New York City Department of Sanitation (March 2004).

subject. Residents in the densely-populated East Harlem/Yorkville area will be denied those protections when the MTS garbage dump is built. Inexplicably, DSNY concluded that several comparable sites in Manhattan were unsuitable for a commercial waste transfer station because these sites could not satisfy the 400-foot rule, including sites where there were no residents (but developers hoped there would be some day). (*Commercial Waste Management Study Volume V, Manhattan Transfer Station Siting Study Report*, New York City Department of Sanitation (March 2004).) In the same breath, DSNY concluded that it was "rational" to locate the MTS less than 200 feet from the *Sane Trash* plaintiffs' densely-populated neighborhood. That cannot be equal protection of the laws.

Finally, the City cannot credibly argue that it is entitled to judgment on the pleadings where it has failed to point to any rational basis for its differential treatment of plaintiffs. The City's motion for judgment on the pleadings is particularly inappropriate given that there are factual disputes regarding DSNY's rationale for allowing an MTS within 400 feet of a residential district even though the MTS garbage facility will process the same commercial waste as every facility to which DSNY has applied this rule. In addition, plaintiffs have plead sufficient allegations to warrant discovery—which will show that they have been singled out by DSNY insofar as the MTS garbage facility, and no other facility that processes commercial waste, is exempt from this rule. The fact that the MTS garbage dump is being built by the City cannot, on its own, justify depriving residents living near the site of protection from the associated health and safety risks, particularly where that waste will be brought in by exactly the same kind of commercial (non-sanitation) trucks that serve private facilities. We believe there is no basis for denying plaintiffs equal protection from these hazards, and the City has articulated none.

Respectfully submitted,

Jennifer Rimm

cc: Christopher K. Connolly, Esq.
Carrie Noteboom, Esq.
Jeffrey L. Braun, Esq.
Karen L. Mintzer, Esq.
Kerri B. Folb, Esq.