**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ x
RESIDENTS FOR SANE TRASH SOLUTIONS, INC., *et al.*,    :
                                                   :
    Plaintiffs,                    :
                                                  :
    v.                             :  12 Civ. 8456 (PAC)
                                                  :
UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*,       :
                                                  :
    Defendants.                    :
------------------------------------------------------------------------ x
------------------------------------------------------------------------ x
NEW YORK STATE ASSEMBLY MEMBER MICAH Z. KELLNER, *et al.*, :
                                                  :
    Plaintiffs,                    :
                                                  :
    v.                             :  12 Civ. 8458 (PAC)
                                                  :
UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*,       :
                                                  :
    Defendants.                    :
------------------------------------------------------------------------ x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE UNITED STATES ARMY CORPS OF ENGINEERS' MOTION FOR SUMMARY JUDGMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-2761
Fax: (212) 637-2786

CHRISTOPHER CONNOLLY
Assistant United States Attorney
 – Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................2

    A.    The Corps Did Not Abuse Its Discretion in Determining the Scope of Its NEPA Analysis..................................................................................................................2

    B.    The Corps' Analysis of Alternatives Was Not Arbitrary and Capricious................4

    C.    The Corps Complied With the CWA in Considering Public Interest Factors and Adopting the Mitigation Plan............................................................................7

    D.    The Corps Was Not Required to Supplement Its Environmental Review to Consider the Potential Effect of Flooding at the 91st Street Site .............................8

    E.    Plaintiffs Fail to Argue that the Corps Was Complicit in Any Violation of Plaintiffs' Equal Protection Rights .........................................................................10

CONCLUSION..............................................................................................................................10

Defendants the United States Army Corps of Engineers and Colonel Paul E. Owen (together, the "Corps"), by their attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submit this reply memorandum of law in further support of their motion for summary judgment.

## PRELIMINARY STATEMENT

As demonstrated by the extensive administrative record, and as explained in the Corps' opening brief, the Corps fully complied with both NEPA and the CWA in issuing its Permit to the City in connection with the 91st Street MTS project.  Plaintiffs' opposition briefs come nowhere near meeting the high standard for demonstrating that the Corps' actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A).  In fact, the briefs merely underscore that plaintiffs' true concern is not with the Corps' discharge of its statutory and regulatory obligations, but rather with the Corps' issuance of the Permit for a City project that plaintiffs oppose.

Specifically, the scope of the Corps' environmental review under NEPA was appropriate, and the Court should reject plaintiffs' invitation to apply a "but-for" causation standard. Furthermore, the Corps adequately considered both off- and on-site alternatives to the City's proposed project, adequately considered the requisite public interest factors under the CWA, and premised its issuance of the Permit on an adequate mitigation plan.  Lastly, the Corps considered the potential impacts of flooding at the 91st Street site and properly determined that Hurricane Sandy required neither supplementation of the Corps' environmental assessment nor a reconsideration of its decision to issue the Permit.  Because the Corps' actions in issuing the Permit complied with both the CWA and NEPA, they are entitled to deference, and the Corps' motion for summary judgment should be granted.

**ARGUMENT**

A.  **The Corps Did Not Abuse Its Discretion in Determining the Scope of its NEPA Analysis**

As explained in the Corps' opening brief, the Corps appropriately concluded that the overall MTS project did not become a federal action for purposes of NEPA review. *See* Corps' Br. at 12-17. It determined that the CWA activity requiring the Permit is limited to fill in a small area of the waters of the United States and, under the Rivers and Harbors Act, dredging and the construction (rather than operation) of an enlarged platform and MTS. The Corps then determined it did not did not have sufficient control and responsibility over post-construction operations to warrant an expanded review beyond the specific activity requiring the Permit. *See* USACE 101, 103-09. Potential environmental consequences of the operation of the 91st Street MTS are not "essentially products of Federal financing, assistance, direction, regulation, or approval." 33 C.F.R. Pt. 325, App. B § 7(b)(2). Instead, they are the products of a City project implemented as part of its comprehensive SWMP, and subject to planning, permitting, and regulation by state and local authorities. *See* USACE 105-07. The Corps has considerable discretion in weighing the factors required to define the "federal action" subject to review, *see, e.g., NRDC v. U.S. Army Corps of Eng'rs*, No. 1:09 CV 588, 2010 WL 1416681, at *3 (N.D. Ohio Mar. 31, 2010), and here, its determination is entitled to deference.

In their opposition briefs, plaintiffs mistakenly contend that the Corps was required to apply an expansive scope of NEPA review because, absent issuance of the Permit, plaintiffs assert that the 91st Street MTS as proposed by the City could not be built. *See* RSTS Opp. Br. at 13 (Corps has control and responsibility over the entire project because "the specific activity necessitating a permit is inseparable from the project"); Kellner Opp. Br. at 19 ("the Corps' issuance of a permit . . . is essential to construct the MTS itself"). That is not the law.

Notwithstanding plaintiffs' argument to the contrary, *see* RSTS Opp. Br. at 16, the Supreme Court in *Department of Transportation v. Public Citizen* rejected the "but for" test plaintiffs assert. 541 U.S. 752, 767 (2004); *see also NRDC*, 2010 WL 1416681, at *11-*14 (limiting review to "specific activity" for which the permit was sought); *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 195 ("*OVEC*") (4th Cir. 2009) ("But the fact that the Corps' § 404 permit is central to the success of the valley-filling process does not itself give the Corps 'control and responsibility' over the entire fill"). Indeed, accepting plaintiffs' but-for causation argument would mean that the Corps would have jurisdiction over all projects that might not occur without the issuance of a Corps permit, *see Wetlands Action Network v. U.S. Army Corps of Eng'rs*, 222 F.3d 1105, 1116-17 (9th Cir. 2000), thus effectively eliminating the Corps' discretion in determining the scope of its analysis and requiring it to assume responsibility over aspects of projects beyond its statutory authority and areas of expertise, *see* 40 C.F.R. § 1508.18; *cf. Hoosier Envtl. Council v. U.S. Army Corps of Eng'rs*, 722 F.3d 1055, 1059 (7th Cir. 2013) ("The Corps of Engineers is not responsible for the interstate highway system.").

Plaintiffs also mistakenly discount the significance of the fact that state and local authorities possess extensive regulatory authority over the operation of the 91st Street MTS. *See* RSTS Opp. Br. at 14-15; Kellner Br. at 21. "NEPA plainly is not intended to require duplication of work by state and federal agencies." *OVEC*, 556 F.3d at 196 (citing 33 C.F.R. Pt. 325, App. B § 7(b)(2)). Accordingly, in such circumstances, courts have routinely deferred to the Corps' determination that its NEPA analysis is limited to the jurisdictional waters. *See, e.g., id.*; *Wetlands Action Network*, 222 F.3d at 1115, 1117; *Kentuckians for Commonwealth v. U.S. Army Corps of Eng'rs*, --- F. Supp. 2d ----, 2013 WL 4516774, at *10 (W.D. Ky. Aug. 23, 2013). Here, the 91st Street MTS's facility operations are regulated by the New York State DEC, and the

3

DEC's permit includes special conditions addressing, among other things, the amount of waste that the 91st Street MTS can process under normal operations, the manner in which waste must be containerized and transported from the facility, and issues pertaining to truck traffic on public streets surrounding the facility. *See* USACE 24-58. In sum, the administrative record demonstrates that the Corps undertook precisely the type of "case-specific, factor-based analysis" its regulations require when determining the scope of its NEPA review, *Sierra Club v. U.S. Army Corps of Eng'rs*, 450 F. Supp. 2d 503, 518 (D.N.J. 2006), *vacated as moot and remanded*, 277 Fed. Appx. 170 (3d Cir. 2008), and its scope determination falls well within the boundaries of the discretion it is afforded.[1]

## B.   The Corps' Analysis of Alternatives Was Not Arbitrary and Capricious

Plaintiffs' claim that the Corps failed to take a "hard look" at on- and off-site alternatives likewise misses the mark. *See* RSTS Opp. Br. at 8-12. NEPA merely requires that the Corps consider a reasonable range of alternatives to the applicant's proposed action. 42 U.S.C. § 4332(2)(C)(iii); 40 C.F.R. § 1508.9(b); 33 C.F.R. Pt. 325 Appx. B § 7(a). The CWA, for its part, requires only consideration of alternatives that are "practicable," taking into account "overall project purposes." 40 C.F.R. § 230.10(a)(2). Under both statutes, it is appropriate for the Corps to take into consideration the overall purpose of the applicant's project. *See, e.g., City of Shoreacres v. Waterworth*, 420 F.3d 440, 450-51 (5th Cir. 2005) ("NEPA requires only that the Corps consider alternatives relevant to the applicant's goals and the Corps is not to define what those goals should be."). The Corps' analysis of potential alternatives, which assessed four on-

---

[1]   In its opening brief, the Corps also argued that it did not improperly "segment" its review of the 91st Street project, adequately considered the indirect and cumulative impacts of the portions of the project over which it has authority, and properly determined that that the Permit could be issued on the basis of an EA rather than an EIS. *See* Corps' Br. at 16-17. Plaintiffs do not challenge the Corps' positions on these issues in their opposition briefs.

4

site, two "No Action," and four off-site alternatives in light of the City's project goals, *see* USACE 120-31, easily meets these standards and is entitled to deference.

At bottom, plaintiffs' complaints about the Corps' alternatives analysis rests not on the applicable statutes or regulations, but on their objection to the City's goal of achieving "borough equity" in the management of its solid waste disposal. *See* RSTS Opp. Br. at 12 n.8. Indeed, their criticisms of alternatives that the Corps thoroughly considered and rejected do not withstand scrutiny. For example, the Corps rejected the option of reusing the existing platform at 91st Street because the platform would not allow for the type of environmentally advanced MTS the City sought to build even though doing so would have less impact on the waters of the United States over which the Corps has jurisdiction. USACE 127. This constitutes a permissible, and logical, consideration of the applicant's project purpose.

The Corps similarly rejected reconfiguration of the MTS because this alternative would increase construction time and consequently cause additional environmental impacts, *see* USACE 128-29; precisely the types of consequences that the Corps was required to evaluate in light of the nature of its Permit, which is concerned with construction-related activities at the 91st Street site, *see* USACE 103-09. The Corps rejected the two "No Action" alternatives, as well as the Randall's Island, Ward's Island, and Harlem Yards off-site alternatives because they plainly do not fit within the City's goal of constructing an MTS in Manhattan capable of transporting solid waste by barge. *See* USACE 121-26, 130; *see also Sierra Club*, 450 F. Supp. 2d at 526 ("courts have upheld location-specific overall project purpose definitions where the specific site was essential to the project purpose"); *Louisiana Wildlife Fed'n v. York*, 761 F.2d 1044, 1048 (5th Cir. 1985) ("it would be bizarre if the Corps were to ignore the purpose for which the applicant seeks a permit and to substitute a purpose it deems more suitable"). Lastly, plaintiffs

fault the Corps for relying on the City's analysis inevaluating and rejecting off-site alternatives in Manhattan, *see* RSTS Opp. Br. at 11, but it was within the Corps' discretion to consider the City's analysis when conducting its own review, *see Hoosier Envtl. Council v.U.S. Army Corps of Eng'rs*, 722 F.3d 1053, 1062-63 (7th Cir. 2013) ("[the Corps] should be able to rely on [the permittee's] analysis, if it is a responsible analysis, while conducting its own analysis of those factors that are within its competence"); *Friends of the Earth v. Hintz*, 800 F.2d 822, 835-36 (9th Cir. 1986) (preventing the Corps from relying on alternatives analyses conducted by permit applicants "would place unreasonable and unsuitable responsibilities on the Corps"); *see also* 33 C.F.R. § 320.4(j)(2) ("The primary responsibility for determining zoning and land use matters rests with state, local and tribal governments. The district engineer will normally accept decisions by such governments on those matters unless there are significant issues of overriding national importance.").

More broadly, in considering an APA challenge to agency action, the court's task is to "determine whether the agency has considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action including whether there is a rational connection between the facts found and the choice made." *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000) (citation and internal quotation marks omitted). The Court may not substitute its judgment for that of the agency, even if the court might arrive at a different conclusion. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). In other words, even if some alternatives might appear both reasonable and practicable in light of the City's overall project purpose, that alone is insufficient to find the Corps' review arbitrary and capricious. Here, given the thorough analysis of alternatives in the record, the Corps' analysis is entitled to deference.

C.  **The Corps Complied With the CWA in Considering Public Interest Factors and Adopting the Mitigation Plan**

Plaintiffs' challenge to the Corps' actions under the CWA is also without merit. *See* Kellner Opp. Br. at 21-23. First, plaintiffs reassert that the Corps failed to undertake an adequate analysis of the public interest factors set forth in 33 C.F.R. § 320.4(a). But as shown in the Corps' opening brief, this argument fails for many of the same reasons as plaintiffs' arguments concerning the scope of the Corps' NEPA analysis. *See* Corps' Br. at 17-18. The record belies any claim that the Corps did not undertake a reasoned and extensive analysis of the public interest factors. Indeed, nearly half of the Corps' MFR is devoted to this analysis, *see* USACE 138-99, and the administrative record also reflects the Corps' consideration of thousands of public comments concerning the 91st Street MTS project, *see* USACE 4985-11143. Furthermore, it was entirely appropriate for the Corps' public interest review to encompass a broader set of issues than its NEPA review. *See, e.g., Sylvester v. U.S. Army Corps of Eng'rs*, 882 F.2d 407, 410 n.4 (9th Cir. 1989) (under CWA, "the Corps could properly consider a wider range of facts in conducting its public interest analysis than the reasonable alternatives analysis").

Nor was the Corps' adoption of the Mitigation Plan arbitrary and capricious. Its consideration of the Mitigation Plan relied heavily not only on input from the City and its agencies, but also on consultation with the EPA and, in particular, NOAA-NMFS. *See* USACE 114-15, 201-15. Neither plaintiffs' claim that off-site mitigation is "the least favored method of mitigation under the Corps' own regulations," *see* Kellner Opp. Br. at 22 (citing 40 C.F.R. § 230.93(b)), nor their assertion that mitigation should have occurred at a higher compensation ratio, *see id.* at 22-23, renders the Mitigation Plan inadequate. Rather, the administrative record demonstrates that the Corps, in consultation with NOAA-NMFS, determined that the best and

7

most practicable mitigation method in this particular instance was the dismantling of over-water structures and the creation of open water at off-site locations that the City already owned. *See* USACE 201-15; *see also* 33 C.F.R. § 332.3(a) ("The district engineer must determine the compensatory mitigation to be required in a DA permit, based on what is *practicable and capable of compensating* for the aquatic resource functions that will be lost as a result of the permitted activity.") (emphasis added). Finally, plaintiffs' continued assertion that the Mitigation Plan does not include performance standards or provide for monitoring, Kellner Opp. Br. at 22-23, fails to account for General Condition 6 of the Permit and Special Conditions J through N of the Permit, which oblige the City to fully complete its mitigation activities, contemplate the Corps' inspections of the mitigation sites, and require the City to take corrective action in the event its mitigation activities fail to comply with the Mitigation Plan. *See* USACE 1-5.

**D.     The Corps Was Not Required to Supplement Its Environmental Review to Consider the Potential Effect of Flooding at the 91st Street Site**

Plaintiffs fail to establish that the Corps was required to supplement its NEPA review or reevaluate its issuance of the Permit in light of Hurricane Sandy. RSTS Opp. Br. at 4-8; Kellner Opp. Br. at 23-25. In light of public comments concerning the potential for flooding and additional information received from the City, the Corps concluded in issuing the Permit that DSNY had adequately considered flood risks and had designed the MTS accordingly. *See* USACE 160-62, 2564-65. Moreover, in two MFRs issued after Hurricane Sandy, the Corps undertook an additional review of the flooding issue, (i) concluding that the initial design plan for the MTS adequately addressed the potential for flooding, (ii) noting the City's post-Sandy modifications to the facility's design, and (iii) observing that, even during Hurricane Sandy, the only part of the 91st Street MTS that would have experienced flooding was the lower level which

8

would not contain loose garbage.  *See* USACE 11419-20.  The Corps' decision not to supplement its environmental review is subject to a "rule of reason," *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 372-76 (1989), and there is no basis for disturbing that decision here.

   Plaintiffs' arguments in opposition hinge almost entirely on their claim that the Corps' analysis was faulty because it failed to consider DSNY's May 31, 2013 Technical Memorandum, which provided further information concerning its anticipated modifications to the facility's design, and subsequent October 23, 2013 letter, which made minor modifications to certain information contained in the Technical Memorandum.  *See* RSTS Opp. Br. at 4-8; Kellner Opp. Br. at 23-25.  But these claims misapprehend the nature of the Corps' decision not to supplement its environmental review.  The Corps certainly considered the City's planned modifications as set forth in DSNY's March 2013 letter.  *See* USACE 11419.  But in doing so, it explained that "the subject of the letter does not directly relate to the Corps' Section 10 and 404 permitting authority."  *Id.*; *see also id.* (noting in the prior paragraph that "the Corps does not set standards for building designs, including those pertaining to flooding.  Such requirements are set by the City of New York and the New York State Department of Environmental Conservation.").  In other words, although the Corps looked favorably on the City's modifications, its decision not to supplement its environmental review did not rest primarily on those modifications, but instead relied on its prior flooding analysis and its determination that Hurricane Sandy did not undermine that analysis.  *See* USACE 11421-22.  The additional information contained in the May 2013 Technical Memorandum and October 2013 Letter therefore does not call into question the Corps' determination.  And in any event, it would appear that plaintiffs' arguments are mistaken regarding what those documents describe.  Contrary to plaintiffs' assertions, both the

9

Technical Memorandum and the original SWMP indicate that loose garbage would only be stored on the loading level, and that garbage on the pier level would be containerized.  *See* Technical Memorandum at 2; SWMP at 3 – 9.

**E.      Plaintiffs Fail to Argue that the Corps Was Complicit in Any Violation of Plaintiffs' Equal Protection Rights**

Finally, as set forth in the City's opening brief, plaintiffs fail to state any cognizable claim that the City has violated their equal protection rights.  City Br. at 14-20.  Accordingly, their claim that the Corps was "complicit" in such a violation is likewise meritless.  *See* Corps' Br. at 25.  Moreover, in addressing the City's equal protection arguments, plaintiffs fail to advance any arguments concerning the Corps' purported complicity.  *See* RSTS Br. at 19-25; Kellner Br. at 4-10.  The Corps therefore is entitled to judgment on this claim as well.

## CONCLUSION

For the foregoing reasons, and those set forth in its opening brief, the Court should grant the Corps' motion for summary judgment, and dismiss plaintiffs' Amended Complaints.

Dated: New York, New York
January 22, 2014

        Respectfully submitted,

        PREET BHARARA
        United States Attorney for the
        Southern District of New York
        *Attorney for Defendants the United States Army Corps of Engineers and Colonel Paul E. Owen*

By:  /s/ Christopher Connolly
      CHRISTOPHER CONNOLLY
      Assistant United States Attorney
      86 Chambers Street, 3rd Floor
      New York, New York 10007
      Tel.: (212) 637-2761
      Fax: (212) 637-2786
      christopher.connolly@usdoj.gov